CASE 14—PETITION EQUITY—MARCH 22.

# Peters, &c. v. Bourne, &c.

### APPEAL FROM MONTGOMERY CIRCUIT COURT.

THE WIFE IS SUBSTITUTED ONLY TO THE RIGHTS OF THE HUSBAND by paying a part of the purchase-money owing by him on a tract of land, and taking an agreement from the vendor that a proportionate part of the land should be conveyed to her.

A tract of land was sold in 1859 for $24,000 by two executors, to whom it had been devised in trust to sell and divide the proceeds among certain devisees, the payments being one third cash, one third in one year, and one third in two years. The purchaser failed to meet the deferred payments, and in 1862 suit was instituted to enforce the lien on the land therefor, pending which the wife of the purchaser paid more than $10,000 on the debt, with the understanding that a proportionate part of the land should be hers, and one executor received the payment and bound himself as such in writing to convey to her the title to such proportion. The suit remained on the docket until 1870, when the amount due, after deducting all payments, was ascertained, and a sale of the land adjudged to pay it. The sale was made, and the price bid was less than the debt for which the land was sold, the executor who signed the agreement with the wife being one of the two purchasers. The wife of the former purchaser then sued the two latter to compel a conveyance to her of the proportion of the land for which she had paid, or for a return of the money paid by her.

*Held*, that the wife, in paying her money in part discharge of the debt of her husband, was merely substituted to that extent to his rights, and held subject to the lien on the land for the residue of the price due, and was not therefore entitled to a conveyance or any equity against the purchasers.

JOHN M. HARLAN, ⎫  . . . . . . . For Appellants,
M. C. JOHNSON,   ⎭
CITED

9 Paige, 237, Van Epps v. Van Epps.
1 Duvall. 194, Longest v. Tyler.

1 Metc. 405, Short v. Tinsley.

9 Bush, 468, Cov. & Lex. R. R. Co. v. Bowler's heirs, &c.

BRECKINRIDGE & BUCKNER,⎫

APPERSON & REID,  .  .  . ⎬  .  .  .  .  For Appellees,

HENRY L. STONE, .  .  .  . ⎭

CITED

Story on Contracts, 5th ed., secs. 336, 252, 222, 548.

Story on Agency, 7th ed., secs. 280, 273, 154, 224.

9 Barr, 430, Richardson v. Richardson.

8 Mass. 162, Sumner v. Williams.

2 C. P. 175, Kilner v. Baxter, L. R.

5 East, 148, Appleton v. Banks.

2 Wheaton, 45, Duvall v. Craig.

7 Cowen, 454, Stone v. Wood.

6 Eng. Com. Law, 200, Childs v. Monins.

9 Co. 94, Banes Case.        Chitty on Contracts, 274.

6 Barr, 41.                  4 Gilm. 536.

2 Bibb, 397, Daviess v. Mead.

2 Mar. 453, Isaack, &c. v. Porter.

2 Mar. 497, Farrow v. Turner.

1 Littell, 121, Overstreet v. Phillips, &c.

4 Mon. 532, Rudd v. Hanna.

4 Dana, 543, Mosely et al. v. Taylor.

1 Duvall, 180, Harrod v. Black, &c.

4 Cowen, 679, Hopkins v. McLaren.

6 B. Mon. 446, Clarkson v. Morgan.

8 Bush, 365, Mitchell v. Holder.

3 Bush, 128, Payne v. Pollard.

1 Mar. 545, MacBean v. Morrison.

1 B. Mon. 201, Trask v. Roberts.

4 Metc. 297, Whitney v. Sudduth.

3 Mar. 258, McCalla v. Riggs.

3 Mar. 183, Bank of Kentucky v. Sanders & Weir.

7 Mon. 356, Offutt v. Ayres.

7 Bush, 372, Burbank v. Posey's adm'r.

1 Mar. 166, Graves v. Graves.

1 Mar. 363, Fraily v. Langford.

2 Mar. 149, Ligget v. Wall.

2 B. Mon. 105, Langdon v. Woolfolk.

9 B. Mon. 10, Craig v. McBride.

9 Dana, 125, Johnson v. Beauchamp.

2 Dana, 295, Jones v. Tipton.

1 Duvall, 135, R. & L. Turnpike Company v. Rogers.
7 Bush, 595, Hall & May v. Jacobs & Co.
34 Eng. L. & E., Mare v. Charles.
44 Eng. Com. Law, 736, Furnival v. Coombs.
85 Eng. Com. Law, 124, Leonard v. Robinson.
10 Cush. 324, Seaver v. Coburn.
11 S. & R. 128, Hopkins v. Mehaffy.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

Mrs. Nancy Jones, while the widow of John Jones, made and published her last will and testament, whereby she directed her whole estate, including a tract of three hundred and five acres of land situated in Bath County which had been conveyed to her by the executors and devisees of her late husband, to be sold, and the proceeds to be equally divided between her nephews and nieces.

After the execution of the will Mrs. Jones married Samuel Rankin, and died leaving him surviving her.

After her death the will was probated, and B. J. Peters and Walker Bourne, who were nominated therein as executors, qualified, and proceeded to execute the provisions of the will. They sold the personal estate and the land, and W. H. Bourne became the purchaser of the tract of three hundred and five acres on the 9th day of February, 1859, at the price of $79.30 per acre.   The will directed that the land should be sold for one third cash and the remainder on a credit of one and two years, which was done, with the promise on the part of the executors that the purchaser might have an extension of one year on each payment by paying interest thereon at six per cent; and the purchaser having availed himself of that privilege, the last installment did not mature until the 9th day of February, 1862.

Soon after the last payment fell due a portion of the devisees brought suit against the executors and the purchaser, seeking a sale of the land to pay the purchase-money and a distribution of the estate.

That suit lingered on the docket, without any final action by the court, until the spring of 1870, when the balance of purchase-money (after deducting payments, including the two sums paid by Mrs. Bourne, as hereafter stated) was ascertained, and a judgment rendered to enforce the vendor's lien and for a sale of the land.

In his answer in that case, which he made a cross-petition against the purchaser, W. H. Bourne, Peters alleged that Bourne had executed his notes to some of the devisees for a portion of their respective shares of the purchase-money, upon which he had become Bourne's surety, and that he had paid off said notes, and he claimed to be entitled by subrogation to a lien on the land, subordinate to the lien for the balance due to the estate, for the amount so paid. It was accordingly adjudged that he had such lien, and that enough land should be sold to satisfy his debt, amounting, as adjudged, to the sum of $3,200. And it was further adjudged that "if it should be deemed best to sell the whole land together, as it is probable that a portion of the tract will pay the liens, the sale may be so made, and for all the purchase-money over and above the amount necessary to satisfy said liens notes of the purchaser shall be taken, payable to James M. Bigstaff, who is hereby appointed trustee for Mrs. Annie Bourne, wife of William H. Bourne, her money, as it appears from the pleadings, advanced by her father, having been applied to payments on said land."

Under this judgment the whole tract was, in August, 1870, offered for sale, when B. J. Peters and James M. Bigstaff became the purchasers at $15,000, being something less than the amount of the judgment.

The sale was reported to the court and confirmed.

In February, 1871, Mrs. Bourne brought this suit in equity against Peters, Bigstaff, Walker Bourne, and her husband, W. H. Bourne; and in her petition, after reciting the making of the will by Nancy Jones, her subsequent marriage and death

during the life of her husband, Samuel Rankin, the probate of
the will, the qualification of the executors, and the sale of the
land to W. H. Bourne, and that it had been agreed between the
executors, Peters and Walker Bourne, that the former would
take control of the real estate and sell it and collect the pro-
ceeds, and that the latter would do the same as to the person-
alty, she went on to set forth the facts relied upon as entitling
her to the relief sought in this action, in substance as follows:

That after the purchase of the land by her husband her
father sold a tract of land which he had given to her, and on
the 11th of November, 1865, for her out of the proceeds of
the sale of her land paid to Peters the sum of $5,985, and on
the 18th of June, 1866, the further sum of $4,887.75, on the
express agreement that as much of the land as said sums of
money would pay for at the price of $79.30 per acre, including
the dwelling-house and improvements, should be conveyed to
her, and that on the 13th of November, 1869, Peters executed
to her on the consideration aforesaid the following bond, viz.:

"Mrs. W. H. Bourne paid to me, as the executor of Mrs. N.
Rankin, deceased, on the 11th of November, 1865, the sum of
five thousand nine hundred and eighty-five dollars; on the 18th
of June, 1866, she paid me four thousand eight hundred and
eighty-seven dollars and seventy-five cents on the land sold by
the executors of Mrs. N. Rankin to W. H. Bourne.   Now this
bond obliges me to convey to the said Mrs. Bourne as much
of said tract of land as said money will pay for at the price of
seventy-nine dollars and thirty cents per acre, her part to in-
clude the dwelling-house and improvements.   Witness my hand
this 13th day of November, 1869.

"(Signed)                          B. J. PETERS,
                         *Executor of Nancy Rankin, deceased.*"

She further alleged that all these things were done with the
consent and approval of her husband and of the other execu-

tor, both of whom were present at the conference between her father and Peters when the latter agreed as before stated.

She then alleges "that a judgment was rendered by the Bath Circuit Court directing the sale of the land or so much as would pay the amount of said judgment," and that the commissioner appointed by the court for the purpose made sale of the land, when Peters and Bigstaff became the purchasers, "both of them knowing that she held the claim herein asserted, and had the bond, filed with her petition, and represented and stated that they made the purchase for her benefit;" that they now refuse to execute said contract, and claim the land as their own.

"Wherefore she prays for a specific execution of the contract, if a good title can be made to her, and, if not, for a rescission, and the payment to her of her money, and for all relief to which, in equity, she may be entitled."

To this petition the defendant Peters answered, admitting that he had received the two sums of money mentioned, and had executed the paper filed with the petition. He alleged that the father of Mrs. Bourne was at the sale when her husband purchased the land and encouraged him to buy, telling him he would aid him and pay for so much of the land as he (Bourne) was unable to pay for; that he had been informed by the plaintiff and her husband that her father was a man of fortune, and he did not doubt but that he would pay all that Bourne was unable to pay, and that he did agree after Mr. W. H. Bourne had purchased that he would convey to Mrs. Bourne as much of the land as her father should pay for, not supposing at the time that any part of it would have to be sold to pay the purchase-money.

That from the 9th of February, 1861, the whole of the purchase-money was on interest, except an inconsiderable part, which had been paid by W. H. Bourne, and that no part of it was paid by Mrs. Bourne or her father until November, 1865,

nearly seven years after the first and nearly four years after the last payment fell due, and that in consequence of the accumulation of interest during that time Bourne became unable to pay for the land, and it had been sold to pay the balance of purchase-money, when he and Bigstaff became the purchasers at $15,000, which, as we have already said, did not pay the balance adjudged to be due from W. H. Bourne on the original purchase and on account of payments made for him by Peters as his surety.

He also alleged that Mrs. Bourne was present when the land was sold, and that she neither made objections or set up any claim to it, and denies that he or Bigstaff said they purchased for her, or that they did in fact so purchase. He says he had offered to sell the land and to give to Mrs. Bourne all he could realize over and above the money he had paid out, and also to give her his commission on the whole purchase, which he thought was satisfactory to her, but subsequently learned it was not; and this suit having been brought, he withdrew any offers he had made, and claimed that the writing executed to her was not obligatory, because made without consideration, and he denied that she was entitled to a conveyance of the land or to recover against him personally the money she had paid.

Bigstaff denied any knowledge of the existence of the bond given by Peters to Mrs. Bourne until after they purchased the land, or that he purchased for her. He alleged that Mrs. Bourne and her husband were both present at the sale when he and Peters purchased, and made no objections, but stood by and saw them buy, and that she is therefore estopped. He denied having acted or professed to act for her in connection with the matter in any way.

The case was heard in the circuit court on these issues, and the court rendered judgment for Mrs. Bourne for 101 acres of the 305 acres of land, to be laid off to include the

dwelling-house and improvements, and Peters and Bigstaff have appealed.

Mrs. Bourne, insisting that she was not adjudged as much land as she is entitled to, prosecutes a cross-appeal.

A number of questions were discussed in the argument at the bar and in the printed briefs of counsel which do not seem to us to be involved in a decision of the case as presented by the pleadings, and we shall confine ourselves to such as we esteem important to a correct determination of the cause as presented by the record.

No complaint is made in the petition of any act or omission of the appellant Peters, except the fact that he had refused to convey to Mrs. Bourne according to what she regards as her rights under the bond filed with her petition, and the only fact alleged upon which it is sought to charge Bigstaff in this suit is that he had notice at the time of his purchase of the existence of the bond and of her claim under it.

No allegation is made impeaching the judgment under which the land was sold, or in any wise affecting Peters, except the allegation that he had received Mrs. Bourne's money and bound himself to convey to her as much land, including the dwelling and improvements, as it would pay for at $79.30 per acre, and the further fact that he and Bigstaff had represented that they purchased for her.

This latter allegation is denied, and there is no proof that it is true.

The judgment under which the land was sold is not alleged to have been invalid, or incorrect in amount, or even to have been erroneous.

There is therefore manifestly no reason for looking into the record in that case in order to see whether there was as much due on the land as was therein adjudged, or whether Peters had a lien, or for the purpose of ascertaining how much was due to him. There is no allegation that there was any thing improper on

the part of any one in probating the will of Mrs. Rankin, and whether there was or not is a question which in no way concerns Mrs. Bourne, and can in no wise affect her interests, except in so far as she may be concerned in the validity of the title to the land.

Her case is rested wholly on the payments made with her money and the bond of the 13th of November, 1869. She claims alone, as against Peters, on the ground that he had received her money and had agreed to convey to her, and against Bigstaff upon the sole ground that he had purchased with notice of her equity.

The question, and the only question, as presented by the pleadings, is whether the bond executed to Mrs. Bourne entitles her in any event to have as much land as the two sums therein named will pay for at $79.30 per acre, or whether her right was subordinate to the lien for the balance of purchase-money due from her husband. If the bond entitled her to the land her rights are unaffected by the judgment of foreclosure and sale made under it. In that event Peters is bound on the bond, and Bigstaff is bound because of the notice which the evidence shows he had of its existence before he purchased.

If, on the other hand, she took subject to the lien for the residue of the purchase-money due from her husband, and was only entitled to what might remain after the purchase-money was paid, she has no right to a conveyance of any part of the land, because none remained after the debt was paid.

We proceed therefore to the consideration of the question whether Mrs. Bourne took under the bond an absolute right to a conveyance in any event, or was only substituted to the rights of her husband as to so much land as her money would pay for.

It is alleged in the petition that the agreement to convey to Mrs. Bourne was made after the land had been sold to her husband, and that this agreement was made with his consent. It is therefore certain that she was not an original pur-

chaser, but that W. H. Bourne was the purchaser of the whole tract. Having sold the whole to him, the executors could not sell a part of the same land to her, but they could, with his consent, allow her to be substituted for him as a purchaser of a part, and this Peters did both by the parol agreement and by the bond. The language of the bond does not import a sale of the land to Mrs. Bourne, but it recites that it had been previously sold to her husband, and the undertaking is to *convey* to her. When the conveyance was to be made the paper does not stipulate, but it is difficult to perceive, if it was intended to convey the land to her in any contingency, why it was not then done. She had paid the money three years and more before the bond was given, and, according to the theory of her counsel, she was as well entitled to a deed then as now. This is a circumstance strongly conducing to the conclusion that the object of the parties was simply to place her in a position in which she would be entitled to a conveyance as a substitute for her husband whenever the balance of the purchase-money was paid. And that such was the understanding of both parties is further evidenced by the unreasonableness of any other purpose on the part of Peters.

He was an executor, and had no personal interest in the matter, and there would seem to have been an absence of any motive for releasing the lien which he had on the whole land while there yet remained more than two thirds of the original price unpaid.

By failing to coerce earlier payment the executor had most probably rendered himself personally liable to the devisees in the event he failed to make the money out of the land, and it is now morally certain that after conveying to Mrs. Bourne as much of the land as her money would pay for at the contract price, the residue would have fallen very considerably short of paying the balance of the purchase-money.

We do not, however, rest our conclusion on the unreason-

ableness of this construction of the contract, but refer to the facts surrounding the parties at the time in order to place ourselves as nearly as possible where they stood in order to be the better able to interpret what they said and did.

The facts as alleged, and as recited in the bond, show that W. H. Bourne was the sole purchaser, and that with his consent the executor agreed to convey to his wife a part of the land which but for Bourne's agreement he would have been bound to convey to him.   This proves that Mrs. Bourne's right to the conveyance came through her husband in virtue of his purchase, and that she stood in his stead and took the obligation to convey to her subject to the same conditions and burdens resting upon the right of her husband to a conveyance to himself.

In other words, Mrs. Bourne held her right to a conveyance as assignee of her husband, and is in precisely the same position she would have been in if W. H. Bourne had held the bond of the executors for title and had indorsed upon it that they should convey to her as much of the land as her money would pay for, and they had executed a writing agreeing to do so.

In that case it is quite clear that she would have taken subject to the payment of the balance of the purchase-money for the whole tract.

If the agreement evidenced by the writing had been made before the purchase, and the sale had thus been made jointly to her and her husband, the case would have been different. Or if it had been averred that Peters agreed with her before she paid her money that if she would pay it she should have as much land as it would pay for, and that she paid it on the faith of such agreement, she might have been entitled to the land, whether the residue would pay the balance of the purchase-money or not.   She does allege that the money was paid "on the express agreement that as much of the   .   .   .   land as said sums of money would pay for   .   .   .   should be con-

VOL. XI.—6

veyed to her;" but with whom this agreement was made is not stated.

In the absence of an allegation that the agreement was with Peters, and in view of the allegations which follow, we can not say that the agreement upon which the money was paid was made with him, but must conclude that it was made between Mrs. Bourne and her husband and subsequently ratified by Peters, with the husband's consent.

We must therefore conclude that whatever right she has, she derived through W. H. Bourne, and, of course, whatever she acquired through him she took *cum onere*. She does not pretend that there ever was a sale to her. All she claims in her petition is that being already bound to convey to her husband, by his consent the executors came under an obligation to convey to her a part of the land they were already bound to convey to him.

But as the executors were already bound to convey to him when the purchase-money was paid, they were not bound to convey to her until their lien was satisfied; and as no land remained after that was done, there was nothing to convey to her.

There is nothing in the answer of Peters in the suit of M. F. Bourne, &c. v. B. J. Peters, &c. inconsistent with this construction of the agreement to convey to Mrs. Bourne, while there is much in the conduct of both himself and W. H. Bourne to show that all parties then understood that agreement just as we have interpreted it. It is true that Mrs. Bourne was not a party to that suit, and can not be bound by it unless the agreement with her was made while it was pending (a fact about which the record is silent); but she alleges that her husband assented to the agreement when made, and it is therefore certain that he knew what the agreement was; and it can hardly be supposed that if he had understood that his wife was entitled to as much land as her money would pay

for, whether the balance of the purchase-money was paid or not, that he would have stood silently by and allowed a judgment to go to sell the whole land without objection, or that he would have failed to inform her of it, so that she could have made the objection herself. Nor would she likely have stood by at the sale without making objection to the sale of the whole if she had known or believed that she possessed the rights she now asserts.

It is true she alleges in an amended petition that she was present at the sale, and told the commissioner she would object to it and assert her claim, and that she started out of the house to go into the yard, where the sale was being made, for that purpose, when Peters told her not to do so, that all she had to do was to place implicit confidence in him. Yet, notwithstanding this is explicitly denied, Mrs. Bourne, although a competent witness herself, fails to testify to it or to prove it, or any part of it, by the commissioner, although he gave his deposition in the cause at her instance.

The statement in the answer of Peters that Mrs. Bourne was entitled to as much land as her money would pay for at the time it was advanced is no more than was stated in the bond, and the fact that he asserted his own claim for the money he had paid to the devisees as the surety of W. H. Bourne as a lien on the land subordinate only to the lien for the balance due to the devisees in the same answer containing the clause relied upon to show his admission of her right, shows that he then understood her rights as subordinate to the payment of the purchase-money.

No foundation was laid in the petition upon which to raise the question whether either of the appellants hold in trust for Mrs. Bourne on account of the relation in which they stood to her. It is not alleged that either did in fact purchase for her, or that either occupied toward her any relation of trust and confidence whatever.

If she had a right to elect to take the land upon reimbursing the appellants the amount bid by them, she should have alleged the facts upon which she based her claim to hold them as trustees for her, and have offered to repay the amount they have paid, or asked for a sale of the land for that purpose.

It appears in the record of the case of M. F. Bourne v. Peters, &c., that Bigstaff was appointed trustee for Mrs. Bourne as to any excess of the proceeds of the sale over the amount of the judgment, and the evidence in this case conduces to prove that he accepted the trust; but there is no such allegation in the petition.

We therefore decline to express an opinion as to whether, if he did in fact accept the trust, his purchase might, at the election of Mrs. Bourne, be declared to be in trust for her, or whether Peters can be adjudged to be a trustee on account of having associated Bigstaff with him in the purchase. These are questions not presented by this record, and any discussion of them would be extra judicial.

The judgment is reversed, and the cause remanded with directions to dismiss the petition.